A. CHRISTOPHER WIEBER, ESQ. (ACW-2077)
Law Office of Mark Scherzer
Attorney for Plaintiff
49 Nassau Street, Fourth Floor
New York, New York 10038
Tel: (212) 406-9606
Email:  markscherzerlaw@verizon.net


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
CHRISTINE THOMA,                                     :

                        Plaintiff,                   :        17-CV-4389 (RWS)(HBP)

        -against-                                    :

THE FOX LONG TERM DISABILITY PLAN    :
and THE LIFE INSURANCE COMPANY OF
NORTH AMERICA,                                       :

                        Defendants.                  :
--------------------------------------------------------------X



# MEMORANDUM OF LAW IN SUPPORT OF
# PLAINTIFF'S SUMMARY JUDGMENT MOTION
# (TO BE TREATED AS A FRCP 52 MOTION FOR
# JUDGMENT ON THE ADMINISTRATIVE RECORD)



Of Counsel:
        ▪Mark Scherzer, Esq.
        ▪A. Christopher Wieber, Esq.

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................ i

TABLE OF AUTHORITIES .................................................................................. ii

PRELIMINARY STATEMENT ............................................................................ 1

STATEMENT OF FACTS .................................................................................... 2

LEGAL STANDARD ........................................................................................... 2

    A.    Ms. Thoma's Entitlement to Disability Benefits is Reviewed *De Novo* ......................... 2

    B.    Rule 52(a)(1) Standards ............................................................................. 6

ARGUMENT ....................................................................................................... 6

    I.    ON DE NOVO REVIEW, MS. THOMA HAS ESTABLISHED BY A PREPONDERANCE OF THE EVIDENCE THAT SHE IS DISABLED ................................ 6

    II.    EVEN ON DEFERENTIAL REVIEW, LINA'S DECISION TO TERMINATE MS. THOMA'S CLAIM WAS UNREASONABLE, ARBITRARY AND CAPRICIOUS ....................................................................................... 11

        A.    Under General Standards of Deferential Review, the Court Must Consider LINA's Conflict of Interest as a Factor .............................................. 11

        B.    LINA Acted in a Conflicted Manner in Terminating Ms. Thoma's Claim ............... 13

        C.    LINA Uncritically Adopted Dr. Berman's Opinion Despite Manifest Flaws ........... 15

        D.    LINA's TSA Was Tainted by Dr. Berman's Flawed Report and its Own Flaws ....... 17

        E.    LINA Placed Undue and Selective Reliance on its Surveillance Evidence .............. 18

    III.    LINA'S DENIAL OF MS. THOMA'S APPEAL WAS UNREASONABLE, ARBITRARY AND CAPRICIOUS .......................................................... 20

        A.    LINA Engaged in Further Conflicted Tactics at the Appeal Stage ........................ 20

        B.    LINA Uncritically Adopted Dr. Grattan's Flawed and Evasive Paper Review ......... 21

        C.    LINA's Appeal Level TSA is Unreasonable because It was Improperly Restricted to Dr. Grattan's Flawed Paper Review ........................................ 24

    IV.    THE COURT SHOULD REINSTATE MS. THOMA'S CLAIM, AWARD INTEREST, AND GRANT HER REQUEST FOR HER ATTORNEYS' FEES ..................... 24

CONCLUSION .................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

- Alfano v. CIGNA Life Ins. Co., 2009 U.S. Dist. LEXIS 28118 (S.D.N.Y., Apr. 2. 2009) .......................................................................................................... 25
- Backman v. Unum Life Ins. Co. of Am., 191 F. Supp. 3d 1053 (N.D. Cal. 2016) ........... 8
- Barbu v. Life Ins. Co. of N. Am., 987 F. Supp. 2d 281 (E.D.N.Y. 2013) .......................... 4
- Bishop v. Aetna Life Ins. Co., 163 F. Supp. 3d 443 (E.D. Ky. 2016) .............................. 17
- Bragg v. Hartford Life & Accident Ins. Co., 2012 WL 32605, 2012 U.S. Dist. LEXIS 1356 (W.D. Ky. Jan. 5, 2012) ...................................................................................... 18
- Brown v. J.B. Hunt Transport Svcs., 586 F.3d 1079 (8th Cir. 2009) .............................. 13
- Burge v. Republic Engineered Prods., 432 F. Appx. 539 (6th Cir. 2011) ........................ 17
- Cherene v. First Am. Fin. Corp. Long-Term Disability Plan, 303 F. Supp. 2d 1030, 1037 (N.D. Cal. 2004) ......................................................................................................... 21
- CIGNA Corp. v. Amara, 563 U.S. 421 (2011) .................................................................. 2
- Collins v. Liberty Life Assur. Co., 988 F. Supp. 2d 1105 (C.D. Cal. 2013) .............. 13, 21
- Connors v. Conn. Gen. Life Ins. Co., 272 F.3d 127 (2d Cir. 2001) ............................... 6, 7
- Cosey v. Prudential Ins. Co. of Am., 735 F.3d 161 (4th Cir. 2013) ................................... 2
- Cross v. Metro. Life Ins. Co., 292 F. Appx. 888 (11th Cir. 2008) ................................... 19
- Demer v. IBM LTD Plan, 835 F.3d 893 (9th Cir. 2016) .................................................. 15
- Dimry v. Bert Bell, 2018 WL ___, 2018 U.S. Dist. LEXIS 41359 (N.D. Cal. Mar. 12, 2018) ......................................................................................................................... 15
- Donachie v. Liberty Life Assur. Co., 745 F.3d 41 (2d Cir. 2014) .................................... 25
- Druhot v. Reliance Std. Life Ins. Co., 2017 WL 4310653, 2017 U.S. Dist. LEXIS 159678 (N.D. Ill. Sept. 28, 2017); ......................................................................................... 11
- Dunda v. Aetna Life Ins. Co., 2016 WL ___, 2016 U.S. Dist. LEXIS 85549 (W.D.N.Y. 2016) ......................................................................................................................... 22
- Dupell v. Aetna Life Ins. Co., 2013 U.S. Dist. LEXIS 9611 (N.D. W. Va., Jan. 24, 2013) ................................................................................................................................... 11
- Durakovic v. Bldg. Serv. 32 BJ Pension Fund, 609 F.3d 133 (2d Cir. 2010) ................. 24
- Fairbaugh v. Life Ins. Co. of N. Am., 737 F. Supp. 2d 68 (2d Cir. 2010) ........................ 25
- Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989) ............................................ 2
- Francis v. Life Ins. Co. of N. Am., 2011 WL 4102143, 2011 U.S. Dist. LEXIS 103924 (S.D. Cal. Sept. 14, 2011) ............................................................................................ 4
- Gaither v. Aetna Life Ins. Co., 394 F.3d 792 (10th Cir. 2004) ....................................... 13
- Galuszka v. Reliance Std. Life Ins. Co., 2017 WL 78889, 2017 U.S. Dist. LEXIS 2711 (D. Vt. Jan. 9, 2017) ................................................................................. 8, 10, 19, 22
- Givens v. Prudential Ins. Co. of Am., 778 F. Supp. 2d 1011 (W.D. Mo. 2011) ............... 18
- Gonda v. Permanente Med. Group, Inc., 10 F. Supp. 3d 1091 (N.D. Cal. 2014) ........... 3, 4
- Green v. Union Sec. Ins. Co., 700 F. Supp. 2d 1116 (W.D. Mo. 2010) .......................... 20
- Guest-Marcotte v. Life Ins. Co. of N. Am., 2018 U.S. App. LEXIS 8105 (6th Cir. Mar. 30, 2018) .................................................................................................................... 21
- Halo v. Yale Health Plan, 819 F.3d 42 (2d Cir. 2016) ....................................................... 3
- Halpin v. W.W. Grainger, Inc., 962 F.2d 685 (7th Cir. 1992) ......................................... 17
- Heim v. Life Ins. Co. of N. Am., 2010 WL 5300537, 2010 U.S. Dist. LEXIS 135370 (E.D. Pa. Dec. 22, 2010) ............................................................................................... 4

- Hirschkron v. Principal Life Ins. Co., 141 F. Supp. 3d 1028, 1030-1031 (N.D. Cal. 2015) ......................................................................................................................... 5
- Holmstrom v. Metro. Life Ins. Co., 615 F.3d 758 (7th Cir. 2010) ............................... 25
- Hunter v. Life Ins. Co., 437 F. Appx. 372 (6th Cir. 2011) ........................................... 17
- Jahn-Derian v. Metro. Life Ins. Co., 2016 WL ___, 2016 U.S. Dist. LEXIS 44910 (C.D. Cal. Mar. 31, 2016) ................................................................................................ 8
- James v. Liberty Life Assur. Co., 582 Fed. Appx. 581 (6th Cir. 2014)..................... 8, 10
- James v. Life Ins. Co. of N. Am., 2014 WL ____, 2014 U.S. Dist. LEXIS 113776 (S.D. Tex. Mar. 11, 2014), aff'd and adopted, 2014 WL ____, 2014 U.S. Dist. LEXIS 112501 (S.D. Tex. Aug. 14, 2014)........................................................................................... 4
- Jebian v. Hewlett-Packard Co. Emp. Benefits Org. Income Prot. Plan, 349 F.3d 1098 (9th Cir. 2003), cert. denied, 545 U.S. 1139 (2005) ............................................................ 8
- Johnson v. Life Ins. Co. of N. Am., 2017 WL 4180328, 2017 U.S. Dist. LEXIS 154187 (D. Colo. Sept. 21, 2017) ..................................................................................... 8, 21, 23
- Kinstler v. First Reliance Standard Life Ins. Co., 181 F.3d 243 (2d Cir. 1999)............. 7
- Kochenderfer v. Reliance Std. Life Ins. Co., 2009 WL 4722831, 2009 U.S. Dist. LEXIS 112954 (S.D. Cal., Dec. 4, 2009)................................................................................ 18
- Krauss v. Oxford Health Plans, Inc., 517 F.3d 614 (2d Cir. 2008) ............................... 2
- Lemon v. E. A. Miller, Inc., 2005 WL 925656, 2005 U.S. Dist. LEXIS 32539 (D. Utah Apr. 18, 2005)........................................................................................................... 15
- Locher v. UNUM Life Ins. Co. of Am., 389 F.3d 288 (2d Cir. 2004) ............................. 7
- Love v. Nat'l City Corp., 574 F.3d 392 (7th Cir. 2009) ............................................... 17
- Mackey v. Liberty Life Assur. Co., 168 F. Supp. 3d 1162 (W.D. Ark. 2016) ................ 18
- Maher v. Mass. Gen. Hosp. Long Term Disability Plan, 665 F.3d 289 (1st Cir. Mass. 2011) .......................................................................................................................... 19
- Marcus v. Califano, 615 F.2d 23 (2d Cir. 1979).......................................................... 7
- McDonald v. Western-Southern Life Ins. Co., 347 F.3d 161 (6th Cir. 2003)................ 12
- McDonnell v. First Unum Life Ins. Co., 2013 WL 3975941, 2013 U.S. Dist. LEXIS 110361 (S.D.N.Y. Aug. 5, 2015) ................................................................................. 7
- Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105 (2008).................................... 12, 13
- Miles v. Principal Life Ins. Co., 720 F.3d 472 (2d Cir. 2013)...................................... 12
- Miller v. United Welfare Fund, 72 F.3d 1066 (2d Cir. 1995)........................................ 12
- Montour v. Hartford Life & Accident Ins. Co., 588 F.3d 623 (9th Cir. 2009)................ 11
- Moran v. Life Ins. Co. of N. Am., 2014 WL 4251604, 2014 U.S. Dist. LEXIS 119844 (M.D. Pa. Aug 27, 2014)............................................................................................. 4
- Muller v. First Unum Life Ins. Co., 341 F.3d 119 (2d Cir. 2003).................................. 6
- Orzechowski v. Boeing Co. Non-Union Long-Term Disability Plan, 856 F.3d 686 (9th Cir. 2017) ............................................................................................................... 3, 5
- Paese v. Hartford Life & Acc. Ins. Co., 449 F.3d 435 (2d Cir. 2006).............................. 7
- Parr v. First Reliance Std. Life Ins. Co., 2017 WL ___, 2017 U.S. Dist. LEXIS 52608 (N.D. Cal. Mar. 31, 2017)........................................................................................... 19
- Prichard v. Metro. Life Ins. Co., 783 F.3d 1166 (9th Cir. 2015)..................................... 2
- Rapolla v. Waste Mgmt. Emple. Benefits Plan, 2014 WL 2918863, 2014 U.S. Dist. LEXIS 87256 (N.D. Cal. Jun. 25, 2014)...................................................................... 5
- Schully v. Cont'l Cas. Co., 380 Fed. Appx. 437 (5th Cir. 2010) .................................. 15
- Schuman v. Aetna Life Ins. Co., 2017 WL 1053853, 2017 U.S. Dist. LEXIS 39388 (D.

Conn. Mar. 20, 2017) ........................................................................................... 6

- <u>Shultz v. Aetna Life Ins. Co.</u>, 2017 WL , 2017 U.S. Dist. LEXIS 109654 (M.D. Ala. Jul. 13, 2017) ............................................................................................................... 11
- <u>Sigal v. Metro. Life Ins. Co.</u>, 2018 WL 1229845, 2018 U.S. Dist. LEXIS 35534 (S.D.N.Y. Mar. 5, 2018) ........................................................................................ 2
- <u>Snyder v. Unum Life Ins. Co. of Am.</u>, 2014 U.S. Dist. LEXIS 181886 (C.D. Cal. Oct. 28, 2014) .................................................................................................................... 5
- <u>Wagner v. American United Life Ins. Co.</u>, 2018 U.S. App. LEXIS 11477 (6th Cir. May 3, 2018 ................................................................................................................... 19
- <u>West v. Aetna Life Ins. Co.</u>, 2018 WL 858747, 2018 U.S. Dist. LEXIS 23765 (D. Colo. Feb. 14, 2018) ..................................................................................................... 11, 20
- <u>Wolfe v. J.C. Penney Co.</u>, 710 F.2d 388 (7th Cir. 1983) ................................................ 17
- <u>Wonsowski v. United of Omaha Life Ins. Co.</u>, 2016 WL 3088141, 2016 U.S. Dist. LEXIS 71677 (N.D. Ill. Jun. 2, 2016) ..................................................................... 8
- <u>Wykstra v. Life Ins. Co. of N. Am.</u>, 849 F. Supp. 2d 285 (N.D.N.Y 2012) .................... 17
- <u>Yancy v. United of Omaha Life Ins. Co.</u>, 2015 WL ___, 2015 U.S. Dist. LEXIS 172233 (C.D. Cal. Dec. 18, 2015) .................................................................................... 21
- <u>Young v. United of Omaha Life Ins. Co.</u>, 165 F. Supp. 3d 984 (E.D. Wash. 2016) ........ 20
- <u>Zaeske v. Liberty Life Assur. Co.</u>, 261 F. Supp. 3d 928 (W.D. Ark. Jun. 5, 2017) ......... 22
- <u>Zervos v. Verizon N.Y.</u>, 277 F.3d 635 (2d Cir. 2002) ................................................... 24
- <u>Zuckerbrod v. Phoenix Mut. Life Ins. Co.</u>, 78 F.3d 46 (2d Cir. 1996) ..................... 12, 24

## Statutes

- California Insurance Code § 10110.6 .................................................................... 3, 5

## Rules

- F.R.C.P. Rule 52 ....................................................................................................... 7

## Regulations

- 29 C.F.R. §2560.503-1 .............................................................................................. 3
- 29 C.F.R. §2560.503-1(h)(2)(iv) ................................................................................ 6
- 29 C.F.R. §2560.503-1(h)(4) ...................................................................................... 6
- 29 CFR §2560.503-1(m)(8)(i) and (ii) ....................................................................... 6
- 29 CFR §2560.503-1(m)(8)(iii) ................................................................................. 6

## PRELIMINARY STATEMENT

To decide whether plaintiff Christine Thoma is entitled to long term disability ("LTD") benefits, the Court must determine whether her complaints of pain are credible and whether defendant Life Insurance Company of North America ("LINA") properly disregarded those complaints. Her orthopedist and her pain specialist (who together treated her for over 16 years), and a separate consulting orthopedist have all deemed her pain credible and supported her disability. So has the Social Security Administration ("SSA"), which awarded her disability benefits in April, 2014, with the help of LINA's chosen vendor. Ms. Thoma, who rose from NBC Page to Senior Producer at Fox News. gave up a 26-year career in television. After the failure of a now-discredited fusion surgery she underwent at the age of 14 to treat her childhood scoliosis, she developed "flatback deformity," underwent four additional major spine surgeries, and is now fused throughout 70% of her spine (C5-C7, and T4-S1), rendering her disabled.

LINA credited Ms. Thoma's pain, and limitations for 2 years, finding her disabled from her "occupation" under the Fox News LTD Plan (the "LTD Plan"). LINA's termination of benefits thereafter – when the LTD Plan transitioned to requiring Ms. Thoma to be disabled from "any occupation" for which she could earn more than $100,803 per year – was not only against the preponderance of the evidence, but arbitrary, as well. LINA improperly excluded consideration of Ms. Thoma's reported *pain* while narrowly focusing solely on what it characterized as her objectively documented *physical functionality*. In addition, LINA used pretexts to undertake surveillance (which it then selectively misused), withheld relevant information, used a conflicted medical examiner, refused to share its examiners' reports with Ms. Thoma's physicians prior to decision, failed to obtain SSA's records, buried SSA's vocational assessment and a detailed vocational expert report submitted by Ms. Thoma on appeal by

providing them only to its paper-only *medical* reviewer, and (at the termination and appeal levels) restricted its vocational consultant's review exclusively to the latest report from its own medical consultant.

## STATEMENT OF FACTS

Plaintiff respectfully refers the Court to her Proposed Findings of Fact and Conclusions of Law ("PFF"), dated May 21, 2018, for the findings which plaintiff submits the Court should make based on the Administrative Record ("AR") and to the Declaration of A. Christopher Wieber ("ACWDecl"), also dated May 21, 2018.  Citations in this Memorandum of Law will be to paragraph numbers in the PFF and ACWDecl and to page numbers in the AR.

## LEGAL STANDARD

### A.    Ms. Thoma's Entitlement to Disability Benefits is Reviewed *De Novo*.

In an action brought by a plan beneficiary to recover plan benefits under 29 U.S.C. § 1132(a)(1)(B), "a denial of benefits… is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator … discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  Language that confers discretionary authority must be clear, as "[a]mbiguities are construed in favor of the plan beneficiary."  Krauss v. Oxford Health Plans, Inc., 517 F.3d 614, 622 (2d Cir. 2008).  Discretion language in non-Plan auxiliary documents, such as summary plan descriptions ("SPDs"), administrative services agreement ("ASAs"), or claim procedure attachments, is ineffectual.  CIGNA Corp. v. Amara, 563 U.S. 421, 438 (2011) (SPD); Prichard v. Metro. Life Ins. Co., 783 F.3d 1166, 1171 (9th Cir. 2015) (SPD); Cosey v. Prudential Ins. Co. of Am., 735 F.3d 161, 170 (4th Cir. 2013) (ASA); Sigal v. Metro. Life Ins. Co., 2018 U.S. Dist. LEXIS 35534, *16-18 (S.D.N.Y. Mar. 5, 2018) ("Additional Information" document).

Even when clear discretion has been granted in a governing plan document, state "no discretion" insurance laws may render that language inoperative.  Orzechowski v. Boeing Co. Non-Union Long-Term Disability Plan, 856 F.3d 686, 695 (9th Cir. 2017) (California Insurance Code § 10110.6 requires *de novo* review despite discretionary clause in plan).

Violations of ERISA's full and fair review procedures will also trigger *de novo* review. Halo v. Yale Health Plan, 819 F.3d 42, 57-58 (2d Cir. 2016) ("[P]lan's failure to comply with the [DOL's] claims-procedure regulation, 29 C.F.R. §2560.503-1, will result in that claim being reviewed *de novo* in federal court"; "[T]he plan 'bears the burden of proof on this issue'").

This Court should first conduct *de novo* review because no governing plan document conveys discretionary authority.  The Group Policy contains no discretionary authority and its integration clause excludes consideration of other documents:  "[t]he entire contract will be made up of the Policy, the application of the Employer, a copy of which is attached to the Policy, and the applications, if any, of the Insureds."  (PFF13.).  The only document purporting to confer discretion, the Appointment of Claim Fiduciary ("ACF," at AR1), which LINA placed prominently as the first page of the AR, was never disclosed before the commencement of this action and is not an amendment, nor was it endorsed on or attached to the Group Policy. (PFF14.)  Despite specific requests, on four occasions prior to this lawsuit, neither LINA nor Fox News provided the ACF as part of the Group Policy (or at all) – even though they did provide amendments.  (PFF15; ACWDecl 1-7.)  While the ACF "authorizes the issuance of appropriate amendments," no such amendment was ever proffered, nor was it endorsed on or attached to the Group Policy.  (*Id.*)  LINA has argued elsewhere that the ACF was ***not*** part of the policy.  Gonda v. Permanente Med. Group, Inc., 10 F. Supp. 3d 1091, 1095 (N.D. Cal. 2014).

In <u>Barbu v. Life Ins. Co. of N. Am.</u>, an identical LINA ACF was deemed insufficient to

confer discretionary authority:

> SPDs are not part of the terms of the plan unless that is conveyed in a clear and
> unambiguous manner... [T]he guidance of the Supreme Court in <u>Amara</u> on SPDs applies
> with equal force to ACFs. Thus, any attempt by defendant to have this Court simply infer
> that the ACF is part of the Plan, even if there is no textual support for that inference in the
> Policy or the ACF itself, is contrary to <u>Amara</u>.... [D]efendant has identified no text in
> any document that incorporates the ACF into the Plan.... Moreover, ... there is actually
> text to support the opposite conclusion. Here, the integration clause does not include the
> ACF among the three items ("the Policy, the application of the Employer...and the
> applications... of the Insureds,") making up the "entire contract...." Courts ... have relied
> on very similar integration clauses when declining to enforce documents extrinsic to the
> insurance policy.... The burden to *show* incorporation of a particular document flows
> naturally from <u>Amara</u>'s focus on which documents actually contain plan terms.... [T]he
> question presented here is decided by ... defendant's burden .... [A]t the very least, the
> conflict between the Policy and the ACF creates an ambiguity to be construed in
> plaintiff's favor, and mandates application of the *de novo* standard of review.

987 F. Supp. 2d 281, 286-289 (E.D.N.Y. 2013) (citations omitted). LINA made no argument

that the ACF constituted a valid amendment in <u>Barbu</u> because "it is uncontroverted here that the

requirements of an amendment of the plan were not satisfied." As here, "the amendment

provision requires any amendment to be 'endorsed on, or attached to, the Policy,'" but, again as

here, "Plaintiff did not receive the ACF until discovery, despite earlier requests for his entire

claim file, and defendant has not attempted to show that the ACF complied with the amendment

rule." *Id.* at 286 FN3 and 288 FN4 (citing <u>Francis v. Life Ins. Co. of N. Am.</u>, 2011 U.S. Dist.

LEXIS 103924, *11 (S.D. Cal. Sept. 14, 2011) and <u>Heim v. Life Ins. Co. of N. Am.</u>, 2010 U.S.

Dist. LEXIS 135370, *4-5 (E.D. Pa. Dec. 22, 2010), which similarly found LINA ACFs

unenforceable for lack of endorsement on or attachment to the policy). *Accord*, <u>Moran v. Life

Ins. Co. of N. Am.</u>, 2014 U.S. Dist. LEXIS 119844, *13-19 (M.D. Pa. Aug 27, 2014); <u>James v.

Life Ins. Co. of N. Am.</u>, 2014 U.S. Dist. LEXIS 113776, *11-14 (S.D. Tex. Mar. 11, 2014), *aff'd

and adopted*, 2014 U.S. Dist. LEXIS 112501 (S.D. Tex. Aug. 14, 2014); <u>Gonda</u>, *supra at* 1095.

*De novo* review is also compelled because California law precludes LINA's use of discretionary language in group policies covering California residents, and there can be no question that the Group Policy covers numerous California residents of Fox's many California-based businesses and offices. (ACWDecl 8-14.) California Insurance Code §10110.6 provides:

> (a) If a policy … offered, issued, delivered, or renewed, whether or not in California, that provides or funds … disability insurance coverage for any California resident contains a provision that reserves discretionary authority to the insurer … to determine eligibility for benefits or coverage, to interpret the terms of the policy, …, or to provide standards of interpretation or review that are inconsistent with the laws of this state, that provision is void and unenforceable.

The Ninth Circuit Court of Appeals has determined that this statute, "which became effective on January 1, 2012, is 'self-executing'; thus, if any discretionary provision is covered by the statute, 'the courts shall treat that provision as void and unenforceable.'" Orzechowski, 856 F.3d at 692. The Group Policy's choice-of-law provision – purporting to select Delaware law (AR16.) – does not supersede California's "no discretion" statute. Rapolla v. Waste Mgmt. Emple. Benefits Plan, 2014 U.S. Dist. LEXIS 87256, *16 (N.D. Cal. Jun. 25, 2014) ("[T]his section applies … regardless of … Texas choice-of-law provisions"); Hirschkron v. Principal Life Ins. Co., 141 F. Supp. 3d 1028, 1030-1031 (N.D. Cal. 2015) (same); Snyder v. Unum Life Ins. Co. of Am., 2014 U.S. Dist. LEXIS 181886 (C.D. Cal. Oct. 28, 2014) (same).

Finally, *de novo* review applies because LINA – as in Halo – violated ERISA's procedural regulations. LINA failed to consider the Vocational Evaluation report, by Victor Alberigi (the "Alberigi VE Report," PFF53, 82-85, 97.), that Ms. Thoma submitted on her appeal. (PFF107-108, 122.) ERISA regulations require LINA to provide a "review that takes into account all comments, documents, records, and other information submitted by the claimant." 29 C.F.R. §2560.503-1(h)(2)(iv) (applied to disability claims via 29 C.F.R. §2560.503-1(h)(4)). LINA buried the vocational report with its medical consultant, Dr. Grattan,

while withholding it from its vocational consultant (*Id.*) – thus violating this regulation and triggering *de novo* review.  Schuman v. Aetna Life Ins. Co., 2017 U.S. Dist. LEXIS 39388, *40-42 (D. Conn. Mar. 20, 2017) (Relying on medical consultant's assessment of claimant's vocational report violates ERISA regulations).  Ms. Thoma was clearly harmed by this violation as the vocational report and supporting materials constituted a central component of her appeal.

LINA also violated ERISA's procedural regulations when it failed – despite specific repeated request from Ms. Thoma – to produce (i) SIU Claim Referral forms or (ii) applicable internal policies.  The former were clearly "generated in the course of making the benefit determination," 29 CFR §2560.503-1(m)(8)(i) and (ii), as LINA now concedes, while the latter were clearly documents that "demonstrate[d] compliance with the administrative processes and safeguards," 29 CFR §2560.503-1(m)(8)(iii).  (ACWDecl 19(b) and (c); PFF37-38, 44.)

## B.    Rule 52(a)(1) Standards.

Where, as here, the parties have agreed to motions for judgment on the administrative record, pursuant to F.R.C.P. Rule 52, "the decision on the motion … can best be understood as essentially a bench trial 'on the papers' with the District Court acting as the finder of fact."  Muller v. First Unum Life Ins. Co., 341 F.3d 119, 124 (2d Cir. 2003).  Such a bench trial pursuant to Rule 52 requires the district court "'to find the facts specially and state separately its conclusions of law thereon,' as well as 'judge the credibility of the witnesses.'"  Connors v. Conn. Gen. Life Ins. Co., 272 F.3d 127, 135 (2d Cir. 2001) (citing Rule 52).

## ARGUMENT

## I.    ON DE NOVO REVIEW, MS. THOMA HAS ESTABLISHED BY A PREPONDERANCE OF THE EVIDENCE THAT SHE IS DISABLED.

On *de novo* review, Ms. Thoma bears the burden of proof to demonstrate her entitlement to LTD Plan benefits by a preponderance of the evidence.  Paese v. Hartford Life & Acc. Ins.

Co., 449 F.3d 435, 441 (2d Cir. 2006).  She must show that she is "unable to perform the

material duties of any occupation for which … she is, or may reasonably become, qualified

based on education, training or experience" and "unable to earn 60% or more of … her Indexed

Earnings," which amounts to a "wage requirement" of $8,402.52/month, or $100,830.24/year.

(PFF21.)  On *de novo review*, the Court does not defer to LINA's evaluation of the evidence.

Locher v. UNUM Life Ins. Co. of Am., 389 F.3d 288, 296 (2d Cir. 2004).  *De novo* review

"applies to all aspects of the denial of an ERISA claim, including fact issues…."  Kinstler v. First

Reliance Standard Life Ins. Co., 181 F.3d 243, 245 (2d Cir. 1999).  In other words,

> [T]he Court … interprets the terms of the benefits plan, determines the proper diagnostic
> criteria, reviews the medical evidence, and reaches its own conclusion about whether the
> plaintiff has shown … that she is entitled to benefits under the plan.

McDonnell v. First Unum Life Ins. Co., 2013 U.S. Dist. LEXIS 110361, *38 (S.D.N.Y. Aug. 5,

2015).  The Court can "evaluate [a physician] opinion in the context of any factors it considered

relevant, such as the length and nature of their relationship, the level of the doctor's expertise,

and the compatibility of the opinion with the other evidence."  Connors, 272 F.3d at 135.

In the Court's evaluation, "the subjective element of pain is an important factor to be

considered in determining disability."  Connors, 272 F.3d at 136.  While "[s]ubjective pain may

serve as the basis for establishing disability, even if ... unaccompanied by positive clinical

findings or other 'objective' medical evidence," Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.

1979), objective evidence of an underlying condition – including an extensive surgical history,

abnormal MRI/X-Ray/CT findings, clinical examination findings (such as abnormal gait,

tenderness, spasm, decreased range of movement, and weakness), and treatment with powerful

anti-pain medications (and analgesic injections) – provides added credence to a patient's

subjective description of her pain.  *E.g.*, Jebian v. Hewlett-Packard Co. Emp. Benefits Org.

Income Prot. Plan, 349 F.3d 1098, 1109 (9th Cir. 2003), *cert. denied*, 545 U.S. 1139 (2005) (in case of degenerative disc disease and back pain, "[t]here is medical evidence in the record … documenting the physiological basis for his back pain; the aggressive surgical treatment he underwent; the persistence of the pain, necessitating continued treatment with innovative painkillers; and professional assessments that Jebian was functionally precluded from standing or sitting for more than a few minutes at a time").  To the same effect are:  Galuszka v. Reliance Std. Life Ins. Co., 2017 U.S. Dist. LEXIS 2711, *64 (D. Vt. Jan. 9, 2017); James v. Liberty Life Assur. Co., 582 Fed. Appx. 581, 590 (6th Cir. 2014); Johnson v. Life Ins. Co. of N. Am., 2017 U.S. Dist. LEXIS 154187, *35 (D. Colo. Sept. 21, 2017); Backman v. Unum Life Ins. Co. of Am., 191 F. Supp. 3d 1053, 1069 and n.9 (N.D. Cal. 2016); Wonsowski v. United of Omaha Life Ins. Co., 2016 U.S. Dist. LEXIS 71677, *42-43 (N.D. Ill. Jun. 2, 2016); and Jahn-Derian v. Metro. Life Ins. Co., 2016 U.S. Dist. LEXIS 44910, *27-28 (C.D. Cal. Mar. 31, 2016).

Ms. Thoma has concretely described the disabling pain she experiences.  (PFF71-75.) This pain is substantiated by a 35-year history of major back surgeries (including failed surgeries that have required "revision").  (PFF28-31.)  Compared to a healthy person (with 24 moveable vertebrae), Ms. Thoma's spine is now fused over 70% of her spine (C5-C7, and T4-S1).  (*Id.*) On MRI, CT Scan and X-Ray, Ms. Thoma exhibits significant abnormalities:  a medically significant sagittal imbalance >4cm, post-fusion cervical straightening, persistent scoliosis, thoracic pseudarthrosis, and ongoing degenerative disc disease (including foraminal stenosis, disk protrusion and spondylolisthesis).  (PFF60-64.)  On physical examination, Ms. Thoma exhibits abnormal/antalgic gait, greater trochanter/hip pain, reduced spinal flexibility, tenderness/spasm of the cervical and thoraco-lumbar spine, and lower extremity muscle

weakness.  (*Id.*)  Ms. Thoma takes powerful, mind-altering pain medications, and has subjected herself to repeated spinal injections to obtain additional pain relief.  (*Id.*)

Ms. Thoma's disability has been repeatedly endorsed by her two principal treating physicians, Dr. Vessa (with expertise in orthopedic surgery of the spine) and Dr. Valenza (Pain Management).  (PFF65, 68, 70, 78-81.)  Dr. Vessa has observed and treated Ms. Thoma for 10 years while Dr. Valenza has done so for 6 years.  (PFF67-68.)  Both doctors have (i) provided physical ability assessments with specific restrictions and limitations that underscore Ms. Thoma's incapacity for work (PFF65, 72.); and (ii) opined that Ms. Thoma's current, limited activity levels (which allow her to set her own schedule, lie down, and nap for portions of the day) are sustained by medication that would have to be increased, to permit work, to levels that would be incompatible with employment (and her health).  (PFF78-81.)  Dr. Dante Implicito, an independent consulting Orthopedic Surgeon also endorsed a physical ability assessment with restrictions and limitations (like those of Drs. Vessa and Valenza) that would be incompatible with regular sustained work at any strength level (*i.e.*, sedentary, light, etc.).  (PFF67, 69, 72.)

The AR thus makes clear that Ms. Thoma's complaints of pain are entirely credible. (PFF59-85.)  She has objectively-established medical conditions that are recognized in the medical literature as causing pain.  Her long-standing treating physicians have prescribed powerful pain treatments because they credit her complaints.  (*Id.*)  Independent physician Dr. Implicito (PFF67, 69, 72.) and the Social Security Administration ("SSA") and its internal and consultative medical examiners concluded disability based on that objective evidence and the consequent pain. (PFF39-42.) Two of LINA's medical reviewers conceded, in light of Ms. Thoma's medical history and objective findings, that she "may experience pain in the cervical, thoracic, lumbar and hip regions" (Garvey, AR679.) and that "these reports of pain are

appreciated and are explained by her history of extensive surgery" (Grattan, AR1791-92.).
Although Drs. Garvey and Grattan minimized Ms. Thoma's pain, they did so on the improper
basis that that her pain "exceeded" the objective evidence of her physical functionality, and, in
Dr. Grattan's case, without the benefit of any physical examination.  (PFF114-15.)  In light of the
findings of pain by **all** these treating and reviewing doctors, the IME report of LINA's Dr.
Berman, which found no pain and no functional limitation, is entirely suspect.  If there is a
credibility issue regarding pain, it is the credibility of Dr. Berman, not Ms. Thoma.  Indeed, Ms.
Thoma's credibility is further buttressed by the drive and ambition reflected in her career
accomplishments, and in the personal attestations provided by Dr. Vessa, Dr. Valenza, Ms.
Thoma's husband, Ms. Thoma's pastor, and Ms. Thoma's hairdresser.  (PFF76.)

LINA had no credible evidence to suggest that Ms. Thoma was misrepresenting her
subjective complaints or malingering (PFF119.), and it was therefore "inappropriate for an
administrator to dismiss a claimant's self-reports and other subjective evidence of disability,
particularly where the administrator has no basis for believing the evidence is unreliable."
James, 582 Fed. Appx. at 58.  *Accord* Galuszka, *supra* at *64.

Ms. Thoma's disability is further substantiated by the detailed 26-page Alberigi VE
Report.  (PFF82-85.)  Mr. Alberigi has extensive credentials in disability evaluation and has
provided expert vocational testimony in SSA proceedings.  (*Id.*)  Mr. Alberigi reviewed SSA's
records, the opinions provided by Ms. Thoma's and LINA's physicians, all prior LINA TSAs,
Ms. Thoma's resume and, in addition, personally interviewed Ms. Thoma.  (*Id.*)  He concluded
that Ms. Thoma is incapable of sustaining employment at a level sufficient to satisfy SSA's wage
requirement of $1,130 – let alone LINA's wage requirement of $8,402.  (PFF85.)

Less than a year before LINA terminated her claim, the SSA determined that Ms. Thoma was incapable of "substantial gainful activity." (PFF41-42.) Mr. Alberigi explained that substantial gainful activity is the ability to generate monthly income of at least $1,040 (in 2013), $1,070 (in 2014), $1,090 (in 2015), and $1,130 (in 2016)." (*Id.*) SSA thus determined that Ms. Thoma was incapable of earning an amount that is $7,272 (86%) *less* than the LTD Plan's wage requirement of $8,402. SSA's decision was based on a combination of medical records and independent medical evaluations. Mr. Alberigi further explained that SSA applied no "special rules" and that its determination included an assessment that Ms. Thoma's disability status was unlikely to change any time in the ensuing 3-year interval, through March, 2018. (*Id.*) LINA required Ms. Thoma to apply for SSA disability ("SSD") benefits to reduce its own benefit payment and provided its preferred vendor to obtain those benefits. (PFF40.) The SSD determination buttresses the other evidence supporting Ms. Thoma's disability. Montour v. Hartford Life & Accident Ins. Co., 588 F.3d 623, 635-636 (9th Cir. 2009); West v. Aetna Life Ins. Co., 2018 U.S. Dist. LEXIS 23765, *23-24, 27-28 (D. Colo. Feb. 14, 2018); Druhot v. Reliance Std. Life Ins. Co., 2017 U.S. Dist. LEXIS 159678, *35-36 (N.D. Ill. Sept. 28, 2017); Shultz v. Aetna Life Ins. Co., 2017 U.S. Dist. LEXIS 109654, *14 (M.D. Ala. Jul. 13, 2017); Dupell v. Aetna Life Ins. Co., 2013 U.S. Dist. LEXIS 9611, at *21-24 (N.D. W. Va., Jan. 24, 2013). Ms. Thoma has demonstrated her disability by a clear preponderance of the evidence.

## II.    EVEN ON DEFERENTIAL REVIEW, LINA'S DECISION TO TERMINATE MS. THOMA'S CLAIM WAS UNREASONABLE, ARBITRARY AND CAPRICIOUS.

### A.    Under General Standards of Deferential Review, the Court Must Consider LINA's Conflict of Interest as a Factor.

Even if the Court finds that the LTD Plan grants discretionary authority to LINA, LINA's claim termination and appeal denial both fail even when reviewed under the more deferential

arbitrary and capricious standard.  Miles v. Principal Life Ins. Co., 720 F.3d 472, 487 (2d Cir. 2013) (reviewing initial and appeal decisions for evidence of arbitrary and capricious decision-making).   A decision is arbitrary and capricious if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law."  Id., at 486.  Substantial evidence "is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [decisionmaker and] ... requires more than a scintilla but less than a preponderance."  Miller v. United Welfare Fund, 72 F.3d 1066, 1072 (2d Cir. 1995).  The Court must determine whether LINA's "decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment."  Zuckerbrod v. Phoenix Mut. Life Ins. Co., 78 F.3d 46, 49 (2d Cir. 1996).  The arbitrary and capricious standard "inherently includes some review of the quality and quantity of the medical evidence and the opinions on both sides of the issues."  McDonald v. Western-Southern Life Ins. Co., 347 F.3d 161, 172-173 (6th Cir. 2003).

In determining how much deference to give LINA's decision, the Court must factor in LINA's financial self-interest along with procedural and substantive defects in its decision-making.  Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105, at 117-19 (2008).  As in Glenn, LINA gave no weight to the SSD award it required Ms. Thoma to pursue.  "[T]he fact that MetLife had encouraged Glenn to argue to the [SSA] that she could do no work, received the bulk of the benefits of her success in doing so …, and then ignored the agency's finding in concluding that Glenn could in fact do sedentary work … was not only an important factor in its own right (because it suggested procedural unreasonableness), but also would have justified the court in giving more weight to the conflict (because MetLife's seemingly inconsistent positions were both financially advantageous)."  554 U.S. at 118.

LINA also engaged in "questionable" actions and "procedural unreasonableness" as

described in more detail below, which evidence both that a conflict of interest affected LINA's decision, and that LINA's decision-making was arbitrary and capricious, denying full and fair review of the claim decision.  LINA acted in a result-oriented and financially self-serving manner, and, therefore, its decision-making is entitled to considerably reduced deference.

      **B.**     **LINA Acted in a Conflicted Manner in Terminating Ms. Thoma's Claim.**

"ERISA imposes [a] higher-than-marketplace quality," requiring "that the administrator 'discharge [its] duties' in respect to discretionary claims processing 'solely in the interests of the participants and beneficiaries' of the plan" and "underscore[ing] the particular importance of accurate claims processing by insisting that administrators 'provide a full and fair review of claim denials….'"  Glenn, 554 U.S. at 115.  ERISA was intended to provide a "nonadversarial method of claim settlement" and, therefore, an "ERISA fiduciary presented with a claim that a little more evidence may prove valid should seek to get to the truth of the matter."  Gaither v. Aetna Life Ins. Co., 394 F.3d 792, 804, 807-08 (10th Cir. 2004).

At both the pre-appeal and pre-lawsuit levels, LINA withheld the surveillance Claim Referral forms and procedural policies from Ms. Thoma, despite her specific requests. (ACWDecl 19(b) and (c); PFF38, 44.)  This, alone, violated ERISA procedural regulations. Brown v. J.B. Hunt Transport Svcs., 586 F.3d 1079, 1086-87 (8th Cir. 2009) (while claimant "possessed most of the documents in the [AR], but … did not have access to the ***entire*** [AR]," the court held that these "failures to respond deprived Brown of sufficient information to prepare adequately for further administrative review or an appeal to the federal courts"); Collins v. Liberty Life Assur. Co., 988 F. Supp. 2d 1105, 1127 (C.D. Cal. 2013) ("Enhanced skepticism is warranted" where, *inter alia*, specifically requested relevant information was withheld).

LINA repeatedly employed surveillance with only pretexts as justification and, indeed,

reciting ever-changing "red flags." (PFF37, 44.) LINA first conducted surveillance in June, 2014 (PFF36.), at a time when two NCM reviews, dated March 19, 2014, and June 10, 2014, found that Ms. Thoma's restrictions and limitations were medically supported – in the latter case, "for another 3 - 4 mos." (PFF34.) The cited "red flags" were pretextual. (PFF37.) Indeed, LINA initiated the surveillance in May, 2014, just two weeks after it referred Ms. Thoma to Allsup (its SSA vendor) because of her presumptive entitlement to SSD benefits. (PFF39.) Similarly, LINA initiated surveillance of Ms. Thoma within 4 weeks after she was determined disabled – with its assistance – by the SSA, and again, using pretextual "red flags." (PFF41, 43-44.) Given LINA's and SSA's contemporaneous findings of disability and no reasonable basis to suspect fraud, LINA's surveillance is revealed as an unjustified fishing expedition.

While LINA eagerly initiated surveillance, it delayed in obtaining Ms. Thoma's SSD file. LINA's first request was nearly 10 months after SSA's disability determination. LINA's failure to obtain Ms. Thoma's SSD claim file is particularly troubling since it was obliged under the terms of the 2013 Regulatory Settlement Agreement to "make a reasonable effort … to obtain SSA records" and to give the SSD award "significant weight." (PFF46.) These obligations are echoed in LINA's internal policies and procedures. (PFF47.) LINA was more interested in terminating Ms. Thoma's claim than in completing its investigation of SSD's file, as it did not wait to receive that documentation before rushing to make its final determination. (PFF52.)

Similarly, LINA's decision was rendered without receiving the anticipated responses to Dr. Berman's report by Drs. Vessa and Valenza. (*Id.*) LINA agreed (telephonically, on November 4, 2015), to consider those responses and Ms. Thoma reiterated this understanding on several occasions and advised that these responses would be provided by May 20, 2016, within 60 days of receipt. (PFF51.) Nonetheless, LINA faxed its termination letter on May 13th,

knowing that the responses were imminent. (ACWDecl Ex. 3; PFF53, 78, 80, 93, 102-03, discussing content of 04-11-2016 Valenza Letter and 05-13-2016 Vessa Letter.) Lemon v. E. A. Miller, Inc., 2005 U.S. Dist. LEXIS 32539, *28 (D. Utah Apr. 18, 2005) ("Defendant's rush to denial demonstrates a serious conflict of interest and an unwillingness to 'get to the truth'").

By withholding information, engaging in a pretextual surveillance, and rushing to judgment without relevant and anticipated information, LINA ran afoul of its fiduciary duty to act as a neutral claim administrator. This warrants reduced deference to its decision.

### C.    LINA Uncritically Adopted Dr. Berman's Opinion Despite Manifest Flaws.

While "there is no treating physician preference in … ERISA, … neither may an administrator *arbitrarily* refuse to credit reliable evidence… , [n]or may an administrator rely on an expert opinion without considering its basis or whether … it is in plain conflict with the medical records." Schully v. Cont'l Cas. Co., 380 Fed. Appx. 437, 439 (5th Cir. 2010) (citations omitted). A claim fiduciary, faced with manifestly conflicting medical opinions, must do more than simply accept the opinion of its own medical examiner. Dimry v. Bert Bell, 2018 U.S. Dist. LEXIS 41359, *11-12 (N.D. Cal. Mar. 12, 2018) (where claim fiduciary "simply adopted the opinions of its retained physicians by default," this was arbitrary and capricious, constituting "the abandonment of discretion, not the exercise of it").

LINA demanded that Ms. Thoma undergo a medical evaluation by Dr. Arnold Berman, despite concerns about his relevant expertise (hips and knees, not the spine, scoliosis, or flatback syndrome), and his apparent sole business enterprise of providing medical evaluations denying disability, at great profit to himself. (PFF49, 87.) Despite manifest flaws, LINA adopted Dr. Berman's report without question. (PFF86.) Demer v. IBM LTD Plan, 835 F.3d 893, 904 (9th Cir. 2016) ("[I]t is not hard to imagine an outside medical examiner who does not engage in a

neutral, independent review, such as where the examiner receives hundreds of thousands of dollars from a single source and performs hundreds of reviews for that source every year"). Even more troubling to LINA should have been Dr. Berman's conclusion that Ms. Thoma had no limitations whatsoever and was capable of performing her own occupation (PFF92, 94.), contradicting multiple LINA medical determinations of disability from her own occupation (including a disability determination based on LINA's own external medical evaluation by Dr. Karen Garvey, performed just one year before).  (PFF34.)  Indeed, LINA's 2015 lump sum settlement offer was premised on LINA's belief that Ms. Thoma was disabled in her own occupation and would continue to be so disabled through May, 2016.  (PFF35.)  More profoundly, however, Dr. Berman's opinion was contrary to every one of Ms. Thoma's treating and consulting physicians (Drs. Vessa, Valenza and Implicito), to SSA's consultative and internal medical staff (who concluded that Ms. Thoma's "total Residual Functional Capacity" was "Less than Sedentary," and that this severity of disability was likely to continue through, at least, March, 2018), and to LINA's own consultants Drs. Garvey and Grattan (who grudgingly acknowledged multiple abnormalities, restrictions and limitations).

Dr. Berman's opinion dispenses with rigorous assessment and instead issues a series of cursory *ipso facto* conclusions.  (PFF85-94.)  Dr. Berman swept aside Ms. Thoma's self-reported pain in a one-sentence dismissal that there were "no findings on clinical examination to support her subjective complaints of cervical and lumbosacral pain," failing to explain why this pain wasn't supported by the opinions of Ms. Thoma's treating physicians, the substantial number of abnormal clinical findings, and the learned medical literature corroborating the presence of debilitating pain in flatback patients.  (*Id.*)  This sort of rationale violates ERISA because "[t]he 'reason' given for denial is not a reason but a conclusion."  Wolfe v. J.C. Penney Co., 710 F.2d

16

388, 392 (7th Cir. 1983).  *Accord*, <u>Burge v. Republic Engineered Prods.</u>, 432 F. Appx. 539, 551

(6th Cir. 2011) ("Bare recitations of 'medical data, without reasoning, cannot produce a logical

judgment about a claimant's work ability'").  A reasoned explanation should include

identification of the evidence considered by the administrator, and an "indication of the

administrator's assessment of any of [that evidence] or of the weight given to them."  <u>Halpin v.</u>

<u>W.W. Grainger, Inc.</u>, 962 F.2d 685, 694 (7th Cir. 1992); <u>Hunter v. Life Ins. Co.</u>, 437 F. Appx.

372, 378 (6th Cir. 2011) (LINA improperly relied on peer reviews which "summarily conclude

that Hunter's complaints of pain and limited functionality 'are not supported' by the medical

evidence," since no "doctor disputes the nature or extent of Hunter's numerous joint and spinal

conditions").  *See also,* <u>Love v. Nat'l City Corp.</u>, 574 F.3d 392, 397 (7th Cir. 2009).

Dr. Berman's opinion was untrustworthy and provided no basis for LINA's termination

of Ms. Thoma's disability claim.  Yet, despite reasons to evaluate Dr. Berman's opinion with a

critical eye, LINA simply adopted his opinion without question or pause.  Underscoring its

invalidity, LINA's own appeal level medical consultant, Dr. Grattan, neither recited nor relied on

Dr. Berman's findings or conclusions.  (PFF109.)

**D.    LINA's TSA Was Tainted by Dr. Berman's Flawed Report and its Own Flaws.**

LINA's Transferable Skills Analysis was based entirely on Dr. Berman's flawed report

(PFF95.), and, therefore, it is inherently flawed itself.  <u>Wykstra v. Life Ins. Co. of N. Am.</u>, 849 F.

Supp. 2d 285, 295 (N.D.N.Y 2012) ("[A]rbitrary and capricious … to rely on the TSA, because it

relied upon an erroneous assessment of Plaintiff's physical capabilities").  Furthermore, LINA

demonstrated its bias by restricting the evidence provided to its vocational consultant.  <u>Bishop v.</u>

<u>Aetna Life Ins. Co.</u>, 163 F. Supp. 3d 443, 454 (E.D. Ky. 2016) ("Aetna acted unreasonably by

commissioning a result-oriented vocational report based on limited records"; "such a small, self-

serving portion of the claimant's records is not reliable evidence").  *Accord*, <u>Givens v. Prudential</u> <u>Ins. Co. of Am.</u>, 778 F. Supp. 2d 1011, 1025-1026 (W.D. Mo. 2011).

The 01-25-2016 TSA had additional flaws.  In his report, vocational consultant Alberigi criticized LINA's TSA because it identified "Advertising and Promotions Manager" as an appropriate position for Ms. Thoma even though she has no training or background in the marketing industry.  (PFF84.)  The failure to consider the particular details of a claimant's work skills and experience is contrary to the terms of the LTD Plan and renders LINA's TSA defective and unreliable.  <u>Mackey v. Liberty Life Assur. Co.</u>, 168 F. Supp. 3d 1162, 1172-1173 (W.D. Ark. 2016) (vocational analysis faulty because "insufficiently individualized," limited to "two basic inputs – 'Transferable Skills' and Ms. Mackey's physical limitations," and didn't factor "material characteristics," such as Ms. Mackey' age and computer skill").  *Accord*, <u>Bishop</u>, 163 F. Supp. 3d at 452; <u>Bragg v. Hartford Life & Accident Ins. Co.</u>, 2012 U.S. Dist. LEXIS 1356, *17-18 (W.D. Ky. Jan. 5, 2012); <u>Kochenderfer v. Reliance Std. Life Ins. Co.</u>, 2009 U.S. Dist. LEXIS 112954, *18-19, 27-28 (S.D. Cal., Dec. 4, 2009).

**E.    LINA Placed Undue and Selective Reliance on its Surveillance Evidence.**

LINA (and Dr. Berman) recited inconsequential parts of its surveillance to justify the termination of benefits, ignoring recorded evidence from the same film that corroborated Ms. Thoma's disability.  LINA's own Dr. Garvey noted that Ms. Thoma "walked with a normal to mild antalgic gait" (PFF34.), and her gait/postural abnormalities are documented in the still-frame color images extracted from the surveillance film.  (PFF60 "Sagittal Imbalance.")  Yet that evidence, supporting her subjective complaints, was ignored in the claim termination.

LINA instead focused on activities that neither contradicted what she reported to LINA, nor demonstrated functionality at a level consistent with regular, full-time work.  Ms. Thoma's

activities were isolated and generally interspersed with extended periods when she was resting in her home. Both of Ms. Thoma's treating physicians concluded that the activities depicted on surveillance were *de minimis* and did not in any way alter their opinions of her disability. (PFF102-03.) Dr. Berman gave short shrift to the surveillance on his initial report, and, after viewing the surveillance, responded that his conclusory opinion regarding Ms. Thoma's disability remained the same. (PFF89.) Yet LINA fixated in its termination letter on Ms. Thoma's standing **on one occasion** for 40 minutes and sitting **on one occasion** for "well over 25 minutes." (PFF100.) This is not equivalent to sitting or standing for extended periods of time throughout an 8-hour day, and a 40-hour work-week, as would be required for regular full-time employment. Given Ms. Thoma's substantial pain medication, her ability to engage in these limited activities, on isolated occasions, without obvious, grimacing pain, does not negate the functional restrictions and limitations caused by her pain (as consistently reported by Ms. Thoma and her doctors). Galuszka, *supra* at *62 ("These isolated references … are more reasonably interpreted as evidence of his efforts to live a normal life despite his debilitating pain").

Courts have repeatedly rejected insurer efforts to transform minimal activities on surveillance into credible evidence of full-time work capacity. Wagner v. American United Life Ins. Co., 2018 U.S. App. LEXIS 11477, *5 (6th Cir. May 3, 2018) ("[T]he surveillance video … is weak evidence of anything beyond those minutes, given that … Wagner's ability to live alone and to engage in sporadic activities says little about his ability to go to work," as "[h]e need not be bedridden to receive benefits"). *Accord* Maher v. Mass. Gen. Hosp. Long Term Disability Plan, 665 F.3d 289, 294-295 (1st Cir. Mass. 2011); Parr v. First Reliance Std. Life Ins. Co., 2017 U.S. Dist. LEXIS 52608, *47-48 (N.D. Cal. Mar. 31, 2017); Cross v. Metro. Life Ins. Co., 292 F. Appx. 888, 892-893 (11th Cir. 2008); Young v. United of Omaha Life Ins. Co., 165 F. Supp. 3d

984, 988 (E.D. Wash. 2016); <u>Green v. Union Sec. Ins. Co.</u>, 700 F. Supp. 2d 1116, 1138 (W.D. Mo. 2010).

At the appeal stage, Dr. Grattan listed and described the surveillance (but attributed no findings or conclusions) (PFF110.), while LINA's appeal denial letter neither described the surveillance nor relied on that evidence (AR371-74.), underscoring its irrelevance.

## III.    LINA'S DENIAL OF MS. THOMA'S APPEAL WAS UNREASONABLE, ARBITRARY AND CAPRICIOUS.

### A.    LINA Engaged in Further Conflicted Tactics at the Appeal Stage.

LINA's most egregious misstep on appeal was its failure to provide Ms. Thoma's appeal-level expert vocational evidence to its vocational consultant.  This violated ERISA procedural regulations.  (*Supra* "Legal Standard," §A.)  LINA gave these materials to medical consultant Dr. Grattan – who summarized Mr. Alberigi's 26-page report in 4 sentences – and then gave only Dr. Grattan's report to its vocational consultant (the same tactic as when it terminated benefits). LINA thus effectively buried the Alberigi VE Report. (PFF107-08, 111, 122, 124.)

Similarly buried was SSA's claim file and Disability Determination Explanation.  (*Id.*) The latter vocational portion of SSA's decision was withheld from LINA's vocational consultant.  Despite specific arguments by Ms. Thoma about the relevance of the SSA file and its stricter definition of disability and despite LINA's own policies requiring a specific explanation (*i.e.*, "specific information, circumstances, and/or policy language"), LINA's appeal decision responds only that " [t]he criteria used by the SSA may differ from the requirements of the policy under which your client is covered."  (AR373.)  LINA's unpersuasive distinguishing of SSA's determination warrants decreased deference. <u>West</u>, *supra* at *23-24, 27-28.

Finally, LINA again rushed to render its appeal determination.  Despite Ms. Thoma's requests for a reasonable opportunity to review and respond to Dr. Grattan's report, LINA –

without ever refusing – moved forward with its appeal determination.  (PFF54,57, 58.)  Yancy v. United of Omaha Life Ins. Co., 2015 U.S. Dist. LEXIS 172233, *59-60 (C.D. Cal. Dec. 18, 2015) (ignoring a request for an opportunity to respond to a consulting physician's report is "suspicious" and "weigh[ed] in favor of finding that Defendant abused its discretion"); Collins, supra at 1127 ("[R]efus[al] to disclose the medical reviews … before the final appeal determination" constituted a failure to "provide meaningful dialogue"); Cherene v. First Am. Fin. Corp. Long-Term Disability Plan, 303 F. Supp. 2d 1030 (N.D. Cal. 2004) (Failure to provide requested information is "evidence of an actual conflict").

**B.    LINA Uncritically Adopted Dr. Grattan's Flawed and Evasive Paper Review.**

As it had done with Dr. Berman's report, LINA on appeal simply adopted its own doctor's review, without any effort to address the flaws, discrepancies, and lacunae of that opinion.  (PFF58, 105-22.)  This appears to be LINA's *modus operandi*.  Johnson, at *40-41 ("The Court has no confidence that LINA in fact reached a 'reasoned' decision" where "through the initial determination, first appeal, and second appeal, … LINA simply adopted the last piece of evidence to come in the door"; "[E]ven under the arbitrary-and-capricious standard, an ERISA plan administrator deserves 'less deference if [it] fails to gather or *examine* relevant evidence'").

Dr. Grattan performed a purely paper review (PFF105.), although the LTD Plan gives LINA the right to examine a claimant.  (AR38.)  While a paper review may sometimes be reasonable, it is particularly problematic "when an employee contends that she is disabled by chronic pain, and the relevant ERISA plan gives the administrator the right to physically examine the employee."  Guest-Marcotte v. Life Ins. Co. of N. Am., 2018 U.S. App. LEXIS 8105, *22-23 (6th Cir. Mar. 30, 2018) (Arbitrary and capricious to deny claim without examination where there is a "clear medical consensus that claimant suffered from  … a disease

21

medically known to cause chronic and severe pain"). *Accord* <u>Galuszka</u>, *supra* at \*75-76; <u>Dunda v. Aetna Life Ins. Co.</u>, 2016 U.S. Dist. LEXIS 85549, \*27 (W.D.N.Y. 2016).  In light of the clearly deficient Berman IME Report, it was incumbent on LINA to conduct a valid physical examination to properly assess Ms. Thoma's pain.

Dr. Grattan's conclusions regarding Ms. Thoma's severity of pain (and associated limitations) are, ultimately, evasive and conclusory.  He concedes that Ms. Thoma (i) is limited, (ii) has an "extensive surgical" history, (iii) has "alteration of spinal kinesiology," and (iv) that "medically necessary work and activity restrictions are required."  (PFF114.)  He then concludes that "[a]lthough [Ms. Thoma's] reports of pain are appreciated ***and are explained by her history of extensive surgery***, the ***objective findings*** do not explain why the claimant would not have the ability to ***function*** within the restrictions outlined below."  (PFF115, emphasis supplied.)  Dr. Grattan thus engages in a semantic legerdemain.  While conceding that her ***pain*** is substantiated by the evidence, he then follows with the *non sequitur* that her ***physical functioning*** is not substantiated by the "objective findings."  But the question here is not whether Ms. Thoma's fused back ***physically*** and ***objectively*** precludes her from sitting, standing, etc.  She is disabled because the pain caused by her back, and specifically exacerbated by these activities, limit her ability to tolerate these activities for the duration required to sustain employment in an reasonable occupation as defined by the LTD Plan.  <u>Zaeske v. Liberty Life Assur. Co.</u>, 261 F. Supp. 3d 928, 940-941 (W.D. Ark. Jun. 5, 2017) (Peer consultant's report "unreliable" where it "focused excessively on Mr. Zaeske's range of motion" because this "does not fully address a patient's pain level while exercising that range of motion").

Dr. Grattan's paper review is deficient in its failure to address how Ms. Thoma's employability would be negatively affected by the increased medication required to function in

the workplace. (PFF122.) His disagreement with Drs. Vessa, Valenza and Implicito is

conclusory and he provides no explanatory rationale. (PFF116.) The first 9 pages are little more

than a list of the evidence he examined, and the last 7-page "Clinical Summary" is a descriptive

summary of the evidence (without any evaluative commentary or assessment). (PFF112.) The

gist of his opinion is contained in the 2-page Recommendations/Rationale. (*Id.*) He cites

additional descriptive summaries of selected medical evidence (without explaining why they

were selected, or how they are connected to his opinion). (PF113.) He then supplies specific

restrictions but does not explain why these particular restrictions are supported by the

"objective" evidence, while the restrictions supplied by Drs. Vessa, Valenza, and Implicito are

not. (PFF115-21.) The obvious difference is that these treating/consulting physicians have

deemed Ms. Thoma's complaints of pain credible, while Dr. Grattan has either ignored Ms.

Thoma's pain or deemed it non-credible (his opinion does not explicitly say which). Drs. Vessa

and Valenza (both of whom have treated Ms. Thoma for many years), and Dr. Implicito (who

conducted his own physical examination) are in far better position to assess Ms. Thoma's

credibility. Indeed, neither Dr. Grattan (nor any other physician) has ever characterized Ms.

Thoma as malingering, exaggerating, or otherwise dissembling her level of pain. (PFF119.)

Under these circumstances, Dr. Grattan's paper review was an insufficient basis for

LINA to uphold its termination of Ms. Thoma's disability claim:

> [A]ll three reports reduce to the same basic conclusion, namely, a lack of objective
> medical evidence to establish that Johnson's self-reported pain is as disabling as she
> claims…. [T]he physicians' observation that no objective medical evidence supported
> the claimed severity of Johnson's trigeminal neuralgia symptoms only highlights the fact
> that the real question is Johnson's credibility when she claims that her pain is disabling….
> Viewed in this light, the three peer review reports offered nothing of substance to LINA,
> and could not be relied upon to justify, affirm, or reaffirm termination of benefits.

Johnson, 2017 U.S. Dist. LEXIS 154187, *39-40.

**C.    LINA's Appeal Level TSA is Unreasonable because It was Improperly Restricted to Dr. Grattan's Flawed Paper Review.**

Like the Berman-based TSA at the claim termination level, the appeal stage TSA was improperly confined to Dr. Grattan's peer consultant report.  (PFF122.)  Moreover, the integrity and validity of the appeal stage TSA was further undermined by LINA's failure to provide the vocational consultant with the Alberigi VE Report and the SSA Disability Determination Explanation.  (PFF124.)  In contrast to the 26-page Alberigi VE Report – which included an assessment of the SSA Claim file, all medical opinions, and LINA's prior TSA, as well as a personal interview of Ms. Thoma – LINA's appeal-level TSA is a 1-1/2 page report based on restrictions derived solely from Dr. Grattan's report.  Durakovic v. Bldg. Serv. 32 BJ Pension Fund, 609 F.3d 133, 141-142 (2d Cir. 2010) (where plan's vocational consultant report was "seriously and obviously flawed" and where claimant's vocational consultant report was "both detailed and particularized where the Apex report was not," claim administrator's "decision was unsupported by substantial evidence, and therefore arbitrary and capricious").

**IV.    THE COURT SHOULD REINSTATE MS. THOMA'S CLAIM, AWARD INTEREST, AND GRANT HER REQUEST FOR HER ATTORNEYS' FEES.**

Awarding benefits is the appropriate remedy "where the difficulty is not that the administrative record was incomplete, but that a denial of benefits based on the record was unreasonable."  Zuckerbrod, 78 F.3d at 51 n.4. *Accord*, Zervos v. Verizon N.Y., 277 F.3d 635, 648 (2d Cir. 2002).  The record here is clearly complete.  Ms. Thoma submitted extensive medical records, SSA's disability file, multiple treating and consultant physician opinions, an expert vocational report, scientific literature about her condition, and witness statements from herself and her husband, pastor and hairdresser.  LINA focused almost exclusively on the absence of "objective evidence" of Ms. Thoma pain – even though there is no objective way to

measure such pain other than by its correlation with Ms. Thoma's well-documented medical history and clinical findings.  Remand would serve only to give LINA yet another chance to review the evidence it chose to overlook or ignore throughout the claim and appeal process. Holmstrom v. Metro. Life Ins. Co., 615 F.3d 758, 779 (7th Cir. 2010) ("[W]e tend to award benefits when the record provides us with a firm grasp of the merits of the participant's claim").

"[A] court may, without further inquiry, award attorneys' fees to a plaintiff who has had 'some degree of success on the merits.'"  Donachie v. Liberty Life Assur. Co., 745 F.3d 41, 46 (2d Cir. 2014).  *See also*, Alfano v. CIGNA Life Ins. Co., 2009 U.S. Dist. LEXIS 28118, at *2-3 (S.D.N.Y., Apr. 2. 2009) (attorneys' fees awarded:  "CIGNA may not have acted outrageously," but "there was no sound basis for CIGNA's termination of … benefits"). Finally, "the need to fully compensate Plaintiff, a consideration of the equities, and the remedial purpose of ERISA … all favor awarding prejudgment interest."  Fairbaugh v. Life Ins. Co. of N. Am., 737 F. Supp. 2d 68, 89 (2d Cir. 2010).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests judgment overturning LINA's termination of benefits, reinstating her claim, and awarding her disability benefits under the Plan retroactive to May 13, 2016, with interest, and her reasonable attorneys' fees.

Dated:  New York, New York
          May 21, 2018

Respectfully submitted,

A. CHRISTOPHER WIEBER, ESQ. (ACW-2077)
Law Office of Mark Scherzer
*Of Counsel:*                      Attorney for Plaintiff
*Mark Scherzer, Esq.*              49 Nassau Street, Fourth Floor
*A. Christopher Wieber, Esq.*      New York, New York 10038
                                   Tel: (212) 406-9606
                                   Email:  markscherzerlaw@verizon.net

25